UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| ACRECENT FINANCIAL CORPORATION,,<br><br>    Plaintiff,<br><br>v.<br><br>FAR AWAY HOLDINGS, LLC, et al.,<br><br>    Defendant. | Civil No. 3:14-cv-01222 (JAF) |

**OPINION AND ORDER**

**I.**

**Introduction**

Plaintiff Acrecent Financial Corporation ("Acrecent" or "Plaintiff") filed suit against Far Away Holdings, LLC ("Far Away"), Arrow International Investments, LLC ("Arrow"), and Sinercon C.A. ("Sinercon") (collectively referred to as "Defendants") for breach of contract. Plaintiff seeks in excess of $3,000,000 representing the deficiency owed under the contracts plus interest, costs, and attorneys' fees.

This matter is before the court on the parties' cross-motions for summary judgment. Plaintiff moved for summary judgment against Defendants (Docket No. 22). Simultaneously, Defendants moved for summary judgment against Plaintiff (Docket No. 21). Plaintiff opposed Defendants' motion (Docket No. 26). Defendants opposed Plaintiff's motion (Docket No. 28). Plaintiff then replied in support of its motion (Docket No. 33). Both parties agree that there are no genuine issues of material fact and that the matter is right for decision by this court.

## II.

## **<u>Summary Judgment Standard</u>**

Federal Rule of Civil Procedure 56 states, in pertinent part, that a court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). The court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). That standard is unaffected where, as here, cross-motions for summary judgment are in play. *See Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 34 (1st Cir. 2005). This court must "determine whether either of the parties deserves judgment as a matter of law on [the] facts that are not disputed." *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996). In so doing, "the court must consider each motion separately, drawing inferences against each movant in turn." *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

## III.

## **Facts**

Defendants and Plaintiff each filed respective statements of uncontested facts. The parties agree on the majority of the facts, yet they disagree how the application of the facts alters the outcome of this matter. The material facts are as follows.

There are two loans forming the underlying debts of Defendants to Plaintiff. In December 2007, Plaintiff granted to Defendant Arrow the sum of $2,160,000 for the purchase of a Jetstream Aircraft model Jetstream 4101 ("Jetstream"). In April 2008, Plaintiff loaned $5,829,983.75 to Defendant Far Away for the purchase of a Hawker Beechcraft model King Air 350 ("King Air"). Defendant Sinercon guaranteed both of the loans on behalf of Defendants Arrow and Far Away.

At some point, Defendants notified Plaintiff that the payments under the two loans could not be made as originally agreed. As of June 9, 2011, Defendants owed $5,122,030.27 and $1,879,055.22 on the two loans. (Docket No. 21-3 at 3, Docket No. 33 at 9 fn 1). The parties executed an agreement on June 9, 2011, resolving all claims arising from the two loans ("Settlement Agreement"). (Docket No. 21-3). The purpose of the Settlement Agreement was "to avoid the expense, uncertainty, and inconvenience of litigation[.]" (Docket No. 21-3 at 1). The parties agreed and acknowledged that final settlement of all claims under the loans occurred "by virtue of their execution and delivery of, and performance of their respective duties and obligations" set forth in the Settlement Agreement. (Docket No. 21-3 at 2).

The following is a chronological rundown of material events:

- April 21, 2011, Defendant Arrow delivered the Jetstream to Plaintiff;
- June 9, 2011, Parties entered into the Settlement Agreement;
- October 2011, Defendants made payment of $50,000;
- October 2011, Defendants made second payment of $40,000;
- December 2011, Defendants made payment of $100,000;
- June 9, 2012, marked one year from the Effective Date of the Settlement Agreement. It is unclear when Defendant Far Away delivered the King Air to Plaintiff; there is no dispute, however, that Plaintiff sold both the Jetstream and the King Air within one year from the Effective Date;
- August 2012, Defendants made payment of $80,000;
- October 12, 2012, Plaintiff sent letter to Defendants alleging default of the terms of the Settlement Agreement;
- November 2012, Defendants made payment of $80,000;
- May 2013, Defendants made payment of $100,000;
- December 2013, Defendants made payment of $50,000;
- March 2014, Plaintiff filed the instant suit; and
- August 2014, Defendants made payment of $187,577.37.

Plaintiff alleges that Defendants breached the Settlement Agreement by failing to make the $350,000 initial payment within thirty days of the Effective Date, by delivering the Jetstream to Plaintiff in a condition not airworthy, and by failing to deliver the King Air free of liens and encumbrances. Plaintiff seeks to enforce Section 5 of the Settlement Agreement which sets forth the remedies in the event of default.

Defendants argue that they are not in default since Plaintiff failed to notify them of the Deficiency amount and Plaintiff has been fully paid under the terms of the Settlement Agreement.

## IV.

## Law and Analysis

Pursuant to Section 3 of the Settlement Agreement, Defendants agreed to deliver both aircraft to Plaintiff in order for Plaintiff to sell the aircraft. Defendants agreed to

pay Plaintiff $350,000 within thirty days of the "Effective Date," which was to be "applied against any Deficiency" as determined in Section 3.12. (Docket No. 21-3 at 3). The Effective Date of the Settlement Agreement was June 9, 2011. Far Away agreed to make all necessary repairs to the King Air in order for the King Air to be in airworthy condition, obtain appropriate certification that the aircraft was ready to fly, and deliver the aircraft to Plaintiff within seven days of the completion of the repairs. Both aircraft were to be delivered with clear title, free of all liens and encumbrances. Defendant Arrow delivered the Jetstream to Plaintiff on April 21, 2011.

Section 3.12(a)(i) sets forth the method for determining the deficiency amount. Section 3.12(a)(i) defines "Deficiency" as the "balance of the debt remaining ("B"), if any, after all of the proceeds from the sale of the two Aircraft ("P"), net of all Disposition Costs ("DC"), are applied against the Debtor Loans ("DL"). The mathematical equation to determine the balance of the Deficiency is: $DL - (P - DC) = B$." (Docket No. 21-3 at 5). The contract sets forth the time frame for making final payment to Plaintiff in Section 3.14. "Final Payment" is defined as "the aggregate of the Deficiency Reduction Payment plus 50% of every U.S. Dollar over US$650,000 with a maximum additional payment cap of US$300,000." Final payment was due within one year of the sale of the last of the two Aircraft and the final determination of the deficiency. Defendants were to make Final Payment in twelve equal monthly installments, plus 7.25% interest per annum, on the fifteenth of every month beginning in the month immediately following the month in which the Final Payment amount was determined.

Section 5 sets forth the procedure for default under the contract. An "Event of Default" includes when "Debtors breach their obligation to make any payment required herein when due and fails to cure such breach within ten (10) days;" or when "Debtors breach any of their other obligations and fail to cure such breach within thirty (30) days after written notice from Creditor to Debtors[.]" Notice to Defendants is effected upon receipt of letter sent via United States Mail or "upon receipt by the sender of a delivery confirmation of a facsimile or electronic mail" directed to Defendants as set forth in Section 8. (Docket No. 21-3 at 7).

The Settlement Agreement states that "[u]pon the occurrence of and Event of Default <u>and so long as the same shall be continuing</u>, creditor may demand that Debtors, jointly and severally, pay as liquidated damages" the full amount of the Deficiency plus interest at 7.25% per annum, all Disposition Costs incurred by Plaintiff, and all costs and expenses, including attorneys' fees, incurred by Plaintiff resulting from the Event of Default. (Docket No. 21-3 at 6) (emphasis added). However, the second paragraph of Section 5 only applies if the Event of Default is continuing. As of November 2012, Defendants had paid Plaintiff the full $350,000 initial payment.

The question then becomes whether Defendants' payment in November 2012 cured this Event of Default such that Plaintiff is not entitled to collect liquidated damages under the second paragraph of Section 5. In cases such as this, where no factual dispute exists, but the question is rather an interpretive one, contract interpretation is construed as a "question of law" for the judge. *Principal Mutual Life Ins. Co. v. Racal-Datacom, Inc.*, 233 F.3d 1, 3 (1st Cir. 2000). Under 31 L.P.R.A. § 3471 "[i]f the terms of a contract are

clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." A contract is clear when it can be "understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir. 1995). Whether Plaintiff is entitled to 100% of the Deficiency plus interests, costs, and expenses or whether Plaintiff is entitled to the $350,000 initial payment plus the $300,000 additional payment cap plus interest turns on whether there is an Event of Default.

There is no dispute that Defendants failed to pay $350,000 to Plaintiff within thirty days of the Effective Date of the Settlement Agreement. Defendants seemingly argue that their entire payment could be paid in installments beginning once the Deficiency amount was determined. There is simply no support for this argument. The Effective Date of the Settlement Agreement was June 9, 2011. Thirty days after the Effective Date was July 9, 2011. As of July 9, 2011, Defendants had paid zero dollars. Accordingly, Defendants were in violation of Section 3.10(a) of the Settlement Agreement. Defendants failed to cure this breach within ten days of July 9, 2011.

Despite Defendants' immediate breach of the Settlement Agreement, Plaintiff did nothing until October 12, 2012. There is an argument that the Settlement Agreement did not require Plaintiff to notify Defendants of an Event of Default under Section 5(i). Section 5(i) reads "Debtors breach their obligation to make payments required herein when due and fails to cure such breach within ten (10) days;" compared to a breach under Section 5(iii) which specifically requires written notification by the Plaintiff: "Debtors

breach any of their other obligations and fail to cure such breach within thirty (30) days after written notice from Creditor to Debtors[.]" (Docket No. 21-3 at 6) (emphasis added).

In a letter dated October 12, 2012, Plaintiff formally notified Defendants of their breach of the agreement, stating that:

> (a) [Defendants] have not paid to [Acrecent] the amount of $350,000.00 on or before the expiration of [30] days of signing the Agreement, (b) have not carried out the maintenance, repairs and inspections required and have delivered the Jetstream in a condition that is not suitable for flight (affecting the product of the sale of said plane by not less than $400,000), and (c) not having delivered the King Air free of liens and encumbrances among other things ("the default"). Said default entitles Acrecent Air to claim from the [Defendants] the amount of the entire deficiency in the loans of $2,525,539.40 and $549,304.53 in interests earned for said amount at 7.25% until September 30, 2012, plus $11,035.62 owed for the payment to Hawker Beechcraft Service Center by Acrecent, less $270,000 paid by the [Defendants] for a net total of $2,815,879.55.

(Docket No. 25-1 at 1).  Plaintiff then proposed a reduced final payment "despite the fact that [it] is entitled to claim" the entire amount of $2,815,879.55. (Docket No. 25-1 at 1).

To the extent that Defendants claim they had a reasonable disagreement over the due date for the initial payment or whether notice of default was required, Defendants were put on notice of Plaintiff's position when demand was made by the October 12, 2012, letter.  As such, even under Defendants' interpretation, Defendants had ten days from receipt of the letter to cure their breach.  Defendants, however, did not pay the remaining amount of the initial payment until November 2012, over ten days later.

This failure to pay the initial $350,000 and failure to cure the breach within ten days is a clear breach of the Settlement Agreement which thereby triggers the payment

process stipulated under Section 5. Though in November 2012 Defendants paid the remaining $80,000 of the initial payment, this did not cure the breach. To accept the proposition that Defendants could cure the breach after the expiration of the ten-day grace period in order to avoid the Section 5 payment formula would render the payment formula meaningless. For example, once the Event of Default occurred, Defendants owed 100% of the Deficiency plus interest and costs, amounting to nearly $3,000,000. Under Defendants' interpretation, they could have begun paying off the $3,000,000 and whenever the payments totaled $80,000, the breach would have been cured and the payment plan under Section 3 would have been back in play. This is nonsensical. The court will not accept an interpretation that would render said Section meaningless. *See e.g., In re Advanced Cellular Systems Inc.*, 483 F.3d 7, 12 (1st Cir. 2007). Accordingly, the court finds that once Defendants' failure to correct the Event of Default within ten days of the written notice triggered the payment plan stipulated in Section 5, Section 3 of the Settlement Agreement no longer applies to the payment terms.

The court also notes that Defendants also likely breached the Settlement Agreement by failing to deliver the Jetstream in an airworthy condition and by failing to deliver the King Air free of liens and encumbrances. Defendants failed to cure these breaches within ten days of the written notice. The parties spend little to no time in discussing these breaches of the Settlement Agreement, and the court will not do so now. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). "Judges are not

expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." *Id.* (quoting *Rivera–Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (additional citation omitted)).

Defendants argue that Plaintiff breached the Settlement Agreement by not notifying Plaintiff in writing of the Deficiency. Though there is no formal requirement in the Settlement Agreement that Plaintiff notifies Defendants upon the calculation of the Deficiency, it would be difficult of any payment of that amount to be made without first knowing what that amount is. The point, however, is moot. Plaintiff had already breached the Settlement Agreement by not paying the initial payment of $350,000 within thirty days of the Execution Date of the Settlement Agreement. Plaintiff's October 12, 2012, letter served as written notice of the Event of Default and Defendants failed to cure the breach within ten days.

Moreover, the October 12, 2012, letter provided notice of the calculation of the Deficiency. There is no evidence that Defendants responded to or challenged that calculation. Assuming that Defendants had not defaulted and Section 3.12 applied, Plaintiff clearly notified Defendants of the Deficiency amount under the terms of the Settlement Agreement. Accordingly, Plaintiff did not breach the Settlement Agreement by failing to provide notice to Defendants of the Deficiency.

## V.

## Conclusion

For the reasons set forth above, the court **GRANTS** Plaintiff Acrecent Financial Corporation's Motion for Summary Judgment (Docket No. 22) and **DENIES**

Defendants' Motion for Summary Judgment (Docket No. 21). Pursuant to Section 5 of the Settlement Agreement, Defendants, jointly and severally, shall pay to Plaintiff (a) 100% of the Deficiency, (b) interest on the Deficiency at 7.25 % per annum from June 9, 2011, until payment of all sums due, (c) Disposition Costs and expenses incurred by Plaintiff, and (d) reasonable attorneys' fees and costs incurred by Plaintiff as a result of Defendants' default.

Within ten (10) days of this Opinion and Order, Plaintiff shall file with the court an Informative Motion detailing current amounts for this award and shall include all supporting documentation that was not previously provided. Plaintiff shall also tender a Proposed Judgment. Defendants shall respond to the Informative Motion within ten (10) days after it is filed.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 13th day of July, 2015.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
